ORDERED that defendant's motion to dismiss be, and the same hereby is, granted.

SAMUEL BRILLIANT CO., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 81–4–00458

Before RESTANI, *Judge.*

(Decided April 4, 1985)

*Doherty, Melahn & Middleton (William E. Melahn)* for plaintiff.
*Richard K. Willard,* Acting Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office and *Jerry P. Wiskin,* United States Department of Justice, Civil Division, for defendant.

RESTANI, *Judge:* Plaintiff brought this action to contest the United States Customs Service's ("Customs") appraisement of imported footwear. The footwear was exported from China in January 1978 and entered at Boston in April 1978. Upon entry, the imported footwear was appraised on the basis of American Selling Price ("ASP") using UniRoyal's Champion Slip-on and Booster Oxford as domestic prototypes.

ASP is a valuation methodology[1] that pertains to classifications of particular goods including certain footwear. *Academy Broadway Corp. v. United States,* 9 CIT 55, Slip Op. 85–16 at 3 (February 5, 1985), *citing* 1 R. Sturm, *Customs Law & Administration,* § 44.1 (2d ed. 1982). ASP valuation was applied to those goods through Presidential Proclamations issued pursuant to section 336 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1336 (1976) (ASP provision, 19 U.S.C. § 1336(b), repealed 1979). *Academy Broadway,* Slip Op. 85–16 at 3. *See* 1 R. Sturm, *supra,* § 44.1, at 1, *citing Bestway Products, Inc. v. United States,* 58 Cust. Ct. 613 (1967). Congress enacted section 336 to protect American manufacturers from foreign competition. This section provided statutory authority to equalize costs of production between competing foreign and domestic goods by adjusting the basis for computation of *ad valorem* rates from Foreign Value to ASP.[2] *See Albert F. Maurer Co. v. United States,* 51 CCPA 114, 119 (1964); *Academy Broadway,* Slip Op. 85–16 at 3–4.

The United States Tariff Commission, after conducting an investigation pursuant to section 336, recommended equalization of the differences in costs of production between American and foreign footwear. *See Academy Broadway,* Slip Op. 85–16 at 5. To equalize these costs, Presidential Proclamation 2027 applied ASP to footwear with textile uppers and rubber soles and footwear primarily composed of rubber. T.D. 46158, 63 Treas. Dec. 232, 234 (1933).

The two styles of imported footwear, the slip-on and the oxford tie, are men's casual shoes with textile uppers and rubber soles. Likewise, Customs' prototypes, the UniRoyal Champion Slip-on and

---

[1] 19 U.S.C. § 1402(g) (1976) (repealed 1979) defined ASP by providing that:

The *American selling price* of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article. (emphasis added).

[2] The pertinent provisions of section 336 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1336 (1976) (ASP provision, 19 U.S.C. § 1336(b), repealed 1979), were:

§ 1336. Equalization of costs of production

(a) Change of classification or duties

In order to put into force and effect the policy of Congress by this chapter intended, the commission (1) upon request of the President, or (2) upon resolution of either or both Houses of Congress, or (3) upon its own motion, or (4) when in the judgment of the commission there is good and sufficient reason therefor, upon application of any interested party, shall investigate the differences in the costs of production of any domestic article and of any like or similar foreign article. In the course of the investigation the commission shall hold hearings and give reasonable public notice thereof, and shall afford reasonable opportunity for parties interested to be present, to produce evidence, and to be heard at such hearings. The commission shall report to the President the results of the investigation and its findings with respect to such differences in costs of production. *If the commission finds it shown by the investigation that the duties expressly fixed by statute do not equalize the differences in the costs of production of the domestic article and the like or similar foreign article when produced in the principal competing country, the commission shall specify in its report such increases or decreases in rates of duty expressly fixed by statute (including any necessary change in classification) as it finds shown by the investigation to be necessary to equalize such differences.* In no case shall the total increase or decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute.

(b) Change to American selling price

*If the commission finds upon any such investigation that such differences can not be equaled by proceeding as hereinbefore provided, it shall so state in its report to the President and shall specify therein such ad valorem rates of duty based upon the American selling price* of the domestic article, as it finds shown by the investigation to be necessary to equalize such differences * * * . (Emphasis added.)

the UniRoyal Booster Oxford are men's casual shoes with textile uppers and rubber soles. The Booster Oxford and Champion Slip-on also contain sponge-cushion insoles. Both parties agree that the imported footwear is classifiable under item 700.60 of the Tariff Schedules of the United States ("TSUS"). Pursuant to headnote 3b, Part IA, Schedule 7 of the TSUS, footwear classifiable under this schedule is dutiable on the basis of the ASP of a "like or similar" good. Plaintiff contends that the ASP appraisement is improper because his imported footwear is not "like or similar" to the UniRoyal prototypes chosen by Customs. As plaintiff claims, if the ASP appraisement is improper, the footwear may be valued at Export Value, 19 U.S.C. § 1402(a) (1976) (repealed 1979) or alternatively, United States Value, 19 U.S.C. § 1402(e) (1976) (repealed 1979). To avoid ASP appraisement, however, plaintiff must prove by a preponderance of the evidence that Customs' chosen prototype is not "like or similar" to his imported goods. *See* 28 U.S.C. § 2639(a)(1) (1982).

The courts have found likeness and similarity to be distinct for ASP purposes. Likeness is defined as being "the same or nearly the same." *Maurer*, 51 CCPA at 117. Examination of the evidence demonstrates that the imports and the prototypes are not identical. The alternative, "similarity", involves four factors: (1) Similarity of material; (2) commercial interchangeability; (3) adaptability to the same use and; (4) competitive character. *A. Zerkowitz & Co.* v. *United States*, 58 CCPA 60, 65, 435 F.2d 576, 580 (1970), *reh'g denied*, 58 CCPA 72, 438 F.2d 1240, *cert. denied*, 404 U.S. 831 (1971), *dismissed on remand*, 69 Cust. Ct. 228 (1972); *Stride Rite Corp.* v. *United States*, 9 CIT 10, Slip Op. 85–3 at 4 (January 9, 1985), *appeal docketed*, No. 85–2067 (Fed. Cir. March 11, 1985); *see also United States* v. *Japan Import Co.*, 2 Cust. Ct. 926, 932 (1939).

At trial, plaintiff sought to prove that the domestic prototypes did not meet the four part test. Plaintiff, first attacked the "commercial interchangeability" or "adaptability to the same use" of the imported slip-on and the Champion Slip-on. Samuel Brilliant, president and treasurer of plaintiff corporation, testified that the two shoes have different functions; the imported slip-on is used as streetwear by low income customers while the Champion Slip-on is a boat or deck shoe. Brilliant also stated that the Champion Slip-on is flat, which enables it to be skid resistant, while the imported slip-on contains a heel. He also testified that the material of the prototype was of a tighter weave, making it more water repellant. Plaintiff thus argued that this significant difference in use prevented commercial interchangeability.

On the other hand, defendant's witness James Sheridan, a National Import Specialist, categorized the import's quarter inch heel as essentially flat. He testified that the sole of the domestic slip-on was not characteristic of a boat shoe because it lacked the zig zag configuration commonly found in boat shoes. Defendant also pointed

out that, unlike the many boat shoes sold by UniRoyal, the Champion Slip-on is not advertised as a boat shoe in its catalogue.[3]

The testimony at trial supports the conclusion that the prototype slip-on is not a classic boat shoe. Nonetheless, the features which make it resemble a boat shoe tend to make it dissimilar to the imported item. In addition, the domestic model is fully cushioned while the import has only a thin layer of material over the sole.[4] Plaintiff argues that the two shoes cannot be "similar" due to this difference in cushioning. In *Zerkowitz,* 58 CCPA at 67, 435 F.2d at 581–82, the CCPA concluded that the lower court had too liberally interpreted the requirement of similarity. The CCPA characterized imported and domestic shoes as not "similar" because the domestic shoes contained cushioned insoles and arch supports which were lacking in the imports. Consequently, the degree of cushioning can weigh heavily in the determination of similarity between imported and domestic footwear. Overall, in this case the domestic shoe appears to be sturdier, has more layers of insole cushioning and is generally better suited to moderate athletic endeavors than the import, which resembles a lounging shoe or slipper.

Plaintiff's second attack on the ASP appraisement focused on the requirement of competitive character. Plaintiff argued that the imported slip-on and the domestic slip-on are not competitive because they are not sold in the same retail stores or to the same customers. These are factors which the CCPA found important in *Japan Import Co.* v. *United States,* 24 CCPA 167, 175, 86 F.2d 124, 130 (1936). *See also Mutual Supply Co.* v. *United States,* 5 Cust.Ct. 614, 621 (1940). Mr. Brilliant stated that his footwear, unlike UniRoyals', is sold to large discount stores and purchased by low income consumers. He testified that the UniRoyal shoe was sold in major department stores. If the items are not sold in essentially the same market they cannot compete commercially. Testimony by the defendant's witnesses confirmed that Customs did not investigate where UniRoyal shoes are sold and to what type of customer, and no testimony was offered by the defendant on this point. As this court stated in *Stride Rite Corp.* v. *United States,* 9 CIT 10, Slip Op. 85–3 at 6 (January 9, 1985), *appeal docketed,* No. 85–2067 (Fed. Cir. March 11, 1985), the burden is on plaintiff to prove that the goods are noncompetitive. In view of Mr. Brilliant's uncontradicted testimony, the court finds that plaintiff has met that burden.

To support its second claim, that the Booster Oxford and the imported oxford are not similar, plaintiff focused again on commercial and functional interchangeability and competitive character.[5] There was no allegation that the Booster Oxford is a boat shoe or was

---

[3] There was conflicting testimony as to the method of construction of the shoes, but the method of construction was not claimed as a significant factor in determining the use or interchangeability of the shoes.

[4] Although the witnesses disagreed as to whether the imported slip-on was cushioned, there was agreement that the domestic prototype had a cushioned insole. The slip-on prototype was not available but the tie shoe of the same line contains a dramatically cushioned insole with arch support.

[5] The primary difference between the imported slip-on and the imported oxford tie is the method of attachment to the foot.

designed for a specific athletic function. Although the import and the prototype both appear to be designed for casual wear, plaintiff has demonstrated convincingly that the two oxfords are not competitive. The Booster Oxford is a much heavier shoe than the import. It contains a thick rubber sole and a cork midsole which are lacking in the imported oxford. In addition, the Booster Oxford is dramatically more NOcushioned than the import, which contains little padding.[6] The Booster Oxford appears to be an adequate "walking" shoe. Mr. Sheridan, on cross-examination, acknowledged that by touching the insoles of the two oxfords he could feel that the cushioning in the import is thinner and less substantial than in the Booster Oxford.

Apart from the apparent physical differences between the import and the domestic oxford, plaintiff claims that the oxfords are not competitive since they are sold in very different types of stores at markedly different prices. The retail stores which sell the shoes do indeed appear to be of significantly different type, and the imported oxford retails for approximately $9.00 while the domestic oxford sells for approximately $18.00.

In support of his argument regarding price, plaintiff points to Mr. Sheridan's testimony that this difference in price would have a significant effect on the competitiveness of the oxfords.[7]

The appraisement of goods on the basis of ASP was statutorily authorized in order to protect domestic manufacturers "where imports are sufficiently similar to American goods to compete directly with them." *Zerkowitz*, 58 CCPA at 67,435 F.2d at 582, *quoting Maurer*, 51 CCPA at 119. Price is one factor which may be considered in determining whether the goods are sufficiently similar. *See United States* v. *Japan Import Co.*, 2 Cust. Ct. 926, 933 (1939). Price, of course, is a factor which should not be weighed too heavily in determining similarity in view of the purpose of the ASP statute. Alone, the price disparity here might not convince this court of lack of competitiveness or commercial interchangeability, but together, price disparity, differing retail outlets, and disparity in weight, cushioning and overall appearance lead the court to conclude that these articles cannot be said to compete directly with each other.

The court finds the evidence relating to Export and United States Value to be somewhat vague, but not patently inadequate. Judicial and administrative economy would appear to be best served by

---

[6] The Booster Oxford is advertised in UniRoyal's catalogue as containing a sponge cushion insole and a light cork midsole. The cushioning can also be observed in the shoe itself, which was an exhibit at trial.

[7] The relevant testimony appears at pages 121–122 of the transcript:

Q. Would you agree that there is a significant difference between the imported products and the UniRoyal products with respect to pricing?

A. Numerically, there is a significant difference.

Q. Do you consider it a commercially significant difference, based on your experience?

A. Commercially significant in that it might affect a decision to purchase by a retailer—yes.

Q. What about with respect to the wholesale?

A. On the wholesale level—to a retailer.

Q. And do you think the customer—you have heard the retail pricing—do you think the pricing is significant between the retail products and the domestic products?

A. If those retail prices are, in fact, the retail prices, that would be significant—a significant difference in the market.

allowing the agency with responsibility for these matters to first decide these issues.

Accordingly, Customs is directed to consider plaintiff's alternative valuation claims and to advise plaintiff and this court of its decision within 120 days of this order.